UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHAN CHOY SEAYANG (A-023-885-232),

Petitioner,

v.

TONYA ANDREWS,

Respondent.

No. 1:26-cv-08612-CSK

ORDER

Petitioner Chan Choy Seayang (A-023-885-232), a native and citizen of Lao People's Democratic Republic ("Laos") who is proceeding without counsel and in forma pauperis, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In February 1980, petitioner was admitted to the United States as a refugee. In October 1994, he received a final order of removal and was placed under an order of supervision because travel documents to Laos could not be obtained. In September 2026, ICE revoked the order of supervision and detained petitioner after ICE obtained a travel document. This habeas action concerns petitioner's current detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be denied.

**I. FACTUAL BACKGROUND**

Petitioner entered the United States lawfully in February 1980 as a refugee from Laos.

(ECF No. 9-2.) Between 1987 and 1994, petitioner sustained three burglary convictions. (ECF Nos. 9-1 at 2, 9-2 at 3, 9-4.) On October 7, 1994, an immigration judge entered a deportation[1] order against petitioner, which petitioner did not appeal. (ECF No. 9-3 at 1.) Because travel documents to Laos could not be obtained at the time, petitioner was released under an order of supervision. (ECF Nos. 9-1 at 2, 9-5 at 4.) While on supervision, petitioner sustained several more criminal convictions. (ECF Nos. 9-1 at 12, 9-2 at 3, 9-4.) Petitioner came to ICE's attention in August 2026 due to a criminal arrest and detention. (ECF No. 9-2 at 2.) On September 11, 2026, ICE obtained a travel document from Lao People's Democratic Republic, valid for 90 days, allowing petitioner to enter the country. (ECF No. 9-6.) On September 16, 2026, ICE revoked the order of supervision and took petitioner into custody, intending to execute the deportation order. (ECF Nos. 9-2 at 2, 9-5 at 1-3.)

## II. PROCEDURAL BACKGROUND

On October 19, 2026, petitioner filed his petition for writ of habeas corpus, a motion for temporary restraining order, and motions to proceed in forma pauperis and appoint counsel. (ECF Nos. 1-4.) On October 21, 2026, the district judge indicated that the Court would rule directly on the petition, ordered respondent's reply, and prohibited respondent from transferring petitioner out of the Eastern District of California. (ECF No. 6.) On October 23, 2026, respondent filed its response along with a motion to dissolve the temporary restraining order so that it could effectuate removal. (ECF Nos. 9, 10.) On October 26, 2026, the district judge modified the no-transfer order to permit execution of the 1994 deportation order. (ECF No. 12.) Petitioner did not submit a traverse. The parties consented to magistrate judge jurisdiction and the matter was reassigned to the undersigned. (ECF Nos. 8, 13, 14.)

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every

[1] Petitioner's immigration court proceedings took place in 1994, before the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRAIRA") modified several provisions of the Immigration and Nationality Act (INA). Pre-IIRAIRA, noncitizens were subject to either "deportation" or "exclusion" proceedings. As of April 1, 1997, deportation and exclusion proceedings were replaced by removal proceedings. See EOIR Policy Manual, Part II, § 6.2, https://www.justice.gov/eoir/policy-manual-eoir/part-II/icpm/chapter-6-2.

individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner claims that his current detention violates his Fifth Amendment right to due process, his Fourth Amendment right against unreasonable seizure, and the Administrative Procedures Act. Respondent contends that detention is lawful pursuant to 8 U.S.C. §1231(a)(6).

### A. Relevant Detention Authority

In analyzing petitioner's challenge to his detention, the Court "must first identify the statutory provision that purports to confer" authority for his detention. Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The Court concludes that petitioner is currently detained pursuant to 8 U.S.C. § 1231(a)(6).

Once a final order of removal has been issued, detention is governed by 8 U.S.C § 1231. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). Petitioner's deportation order became administratively final once the deadline to submit an appeal passed in 1994, and the 90-day removal period has thus long since elapsed. (ECF No. 9-3 at 1.) Detention after the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). After the 90-day removal period has elapsed, ongoing detention is authorized for those who are inadmissible under 8 U.S.C. § 1182, removable under § 1227(a)(1)(C), (a)(2), or (a)(4) or who DHS determines to be a risk to the community or unlikely to comply with the order of removal. 8 U.SC. § 1231(a)(6). Petitioner is deportable

under § 1227(a)(2)(A)(ii)[2] for having been convicted of two or more crimes involving moral turpitude. His detention beyond the 90-day removal period is thus permitted by §1231(a)(6).

**B. Due Process (Claims One and Two)**

The Supreme Court examined the constitutional limits of detention under § 1231(a)(6) in Zadvydas v. Davis, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). Zadvydas read an implicit due process limitation into the immigration statute governing the removal of noncitizens subject to a final order of removal in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six month period of post-removal order detention. See Zadvydas, 533 U.S. at 701. After that period, if a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Here, petitioner has been detained for approximately two months, well within the presumptively reasonable limits set forth in Zadvydas. Moreover, petitioner has not provided a reason to believe that removal is unlikely to occur in the reasonably foreseeable future. Prior impediments to removal have been resolved: respondent has procured a valid travel document allowing petitioner's return to Laos (ECF No. 9-6), and the Court has modified its prior transfer order to permit execution of the removal order. (ECF No. 12.)

---

[2] Pre-IIRAIRA, the deportability ground for having multiple convictions for crimes involving moral turpitude was listed under INA § 241 (8 U.S.C. § 1251). It is now listed under INA § 237 (8 U.S.C. § 1227). The wording of pre-IIRAIRA INA § 241(a)(2)(A)(ii) and the current INA § 237(a)(2)(A)(ii) are nearly identical, the latter replacing "entry" with "admission." Compare INA § 241(a)(2)(A)(ii), as amended by §601 Public Law 101-649 (Nov. 29, 1990), with INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii).

Petitioner also asserts a protected liberty interest in avoiding re-detention after having been previously released from custody under an order of supervision. (ECF No. 1 at 28.) The detention of noncitizens subject to final removal orders is governed by 8 C.F.R. §241.4. Specifically, § 241.4(l) allows ICE to revoke the release of a noncitizen under an order of supervision if it determines that (i) the purposes of released have been served, (ii) the noncitizen violates any condition of release, (iii) it is appropriate to enforce a removal order to commence removal proceedings, or (iv) the noncitizen's conduct indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(2). The noncitizen must be notified of the reasons for revocation of release and be afforded an initial informal interview promptly after return to custody. 8 C.F.R. § 241.4(1)(1). If not released after the informal interview, the noncitizen may undergo a formal review process "which will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). Here, petitioner was re-detained once ICE obtained the Laotian travel document, which gave them the ability to effectuate the removal order. (ECF No. 9-6.) Petitioner was given notice of the reasons for revocation and was given an informal interview. (ECF No. 9-5 at 1-3.) The record does not indicate whether the formal review process per 8 C.F.R. § 241.4(l)(3) has been initiated, but the time since revocation of release has not yet exceeded three months. The Court therefore finds no due process violation in petitioner's current detention.[3]

## VI. MOTION FOR APPOINTMENT OF COUNSEL

Petitioner filed a motion for appointment of counsel. (ECF No. 4.) There currently exists no absolute right to appointment of counsel in habeas proceedings. See Nevius v. Sumner, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the Court can appoint counsel at any stage of the case "if the interests of justice so require." See Rule 8(c), Fed. R. Governing § 2254 Cases. The Court concludes that the interests of justice do not require appointment of counsel, and petitioner's motion for appointment of counsel is denied without prejudice.

---

[3] For similar reasons, the Court rejects petitioner's third claim under the Fourth Amendment. The Court also rejects petitioner's fourth claim, as petitioner is not a member of the class certified in Garro Pinchi v. Noem, 813 F. Supp. 3d 973 (N.D. Cal. Dec. 19, 2025).

## VII. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) is denied.

2. Petitioner's motion for temporary restraining order (ECF No. 3) is denied.

3. Petitioner's motion to appoint counsel (ECF No. 4) is denied.

Dated: November 17, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

11/seay8612.157.2241.order